IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| SMILEY TEAM II, INC., <br><br>*Plaintiff,* <br><br>vs. <br><br>GENERAL STAR INSURANCE COMPANY, <br><br>*Defendant.* | §§§§§§§§§§§§§§§§ CIVIL ACTION NO. 3:21-cv-00103 |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

Defendant General Star Indemnity Company[1] ("Defendant" or "General Star") files this Motion for Summary Judgment and Brief in Support ("Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure and states as follows:

### I.   SUMMARY OF MOTION

Plaintiff Smiley Team II, Inc. ("Plaintiff") seeks insurance coverage under its property insurance policy issued by General Star for damage allegedly caused by a car collision occurring on or about September 14, 2017 ("Claim"). Defendant's investigation of the claim revealed that the property sustained some damage as a result of the September 14, 2017 incident. Accordingly, Defendant issued payment to Plaintiff for $33,337.23 for covered damages under the Policy. The Policy expressly excludes pre-existing damage and

---

[1] Plaintiff's First Amended Complaint incorrectly names defendant as General Star Insurance Company.

damage as a result of windstorm or hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. It is undisputed that the roof of the property in dispute had signs of pre-existing damage wholly unrelated to the Claim. In fact, Plaintiff's consultants retained during the adjustment of the claim submitted estimates that *did not include the damaged roof* in connection with this Claim, and conceded that the roof sustained damage due to Hurricane Harvey – not the September 14, 2017 vehicular incident. Nevertheless, Plaintiff filed this lawsuit seeking to recover for damage to the roof, damage that is expressly excluded under the Policy.

The evidence unquestionably shows that the additional damage now claimed by Plaintiff was not caused by the September 14, 2017 incident, and there is no evidence that the incident caused damage to Plaintiff's property in excess of the prior payments made by Defendant. Accordingly, Defendant is entitled to summary judgment on Plaintiff's breach-of-contract cause of action. Further, because Plaintiff cannot recover on its breach-of-contract claim, and Plaintiff does not seek recovery for any injury independent of its claim for contract benefits, Plaintiff also cannot recover under its extra-contractual claims as a matter of law. For this reason, Defendant is entitled to summary judgment on all of Plaintiff's extra-contractual claims.

Accordingly, this Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety, with prejudice to the refiling of same.

## II.   BACKGROUND FACTS

General Star issued policy number IMA254728F to Smiley Team II, Inc. ("Insured"), which applies to covered losses that occur during the policy period, from

2

February 17, 2017 to February 17, 2018 (the "Policy"), subject to all terms, conditions and limitations therein.[2] On September 27, 2017, General Star received a notice of loss for damage to property located at 7425 Hwy. 6, Hitchcock, Texas (the "Property") allegedly resulting from a car collision occurring on or about September 14, 2017.[3] Upon receipt, General Star immediately began its investigation, retaining an independent adjuster with D'Brook & Company, Inc. to adjust the loss.[4]

D'Brook's investigation revealed damage to the property, specifically including the front of the building, interior walls, flooring, entrance doors, and window framing.[5] As of D'Brook's initial inspection, the Insured advised that it had brought in a contractor to prepare an estimate for repairs.[6] To that end, D'Brook continued to work with the Insured and its preferred contractor to establish an agreed scope of loss and cost of repairs.[7] Plaintiff submitted an initial estimate from its consultant, Michael Mikula, Jr., dated December 23, 2017 totaling $129,057.93 on an RCV basis, which included removal and replacement of the roofing at the Property, in addition to the foregoing enumerated scope of repairs.[8] However, upon further discussion, Mikula admitted that the roofing was unrelated to the

---

[2] Dkt. No. 10, Pl.'s Am. Compl. ¶ 1.

[3] *Id.* at ¶ 7. Plaintiff's notice of loss submitted to General Star notes a September 16, 2017 date of loss. However, for purposes of this Motion, General Star references the date of loss as alleged in Plaintiff's First Amended Complaint.

[4] DEF000147, Exhibit 8.

[5] DEF0001, Exhibit 1.

[6] *Id.*

[7] DEF0002, Exhibit 2.

[8] DEF000197-000198, Exhibit 11.

3

Claim as that damage had resulted from Hurricane Harvey, and submitted a revised estimate for the vehicle damage only, totaling $50,676.49 on an RCV basis.[9]

In light of the issues with potential overlap as between Hurricane Harvey-related damages (which are, notably, excluded under the Policy) and those caused by the vehicle impact, D'Brook engaged an engineer with Haag Engineering to inspect the Property and separate any such damages.[10] Haag Engineering completed an inspection on February 6, 2018 and concluded as follows:[11]

> Based on our inspection and the information discussed above, we have reached the following conclusions:
>
> 1. Our inspection along with our review of photographs from the owner and tenant revealed that the wall, including sheet metal siding, brick masonry veneer, wall and window framing, and interior finishes were damaged from the north end of the entry doors to the south end of the second window south of the entry doors, and repairs are necessary.
> 2. Previous roof repairs were in poor condition and likely led to water ingress and the observed leaks in the northeast office area.
> 3. The northeast office area leaks were unrelated to the vehicle impact.

D'Brook prepared an estimate for undisputed damages based on the scope of damage reported by Haag Engineering, which totaled $39,318.04 on an RCV basis.[12] After deduction of depreciation and the $1,000 deductible, General Star tendered payment totaling $33,337.23 on May 3, 2018.[13]

---

[9] DEF000157-000158, Exhibit 9.

[10] DEF000389, Exhibit 13.

[11] DEF000393, Exhibit 13.

[12] DEF00011, Exhibit 4.

[13] DEF00012, Exhibit 5.

4

Over a year after the undisputed payment was issued, Plaintiff retained a public adjuster, L.A. Public Insurance Adjuster, who submitted a new estimate for the Claim totaling $119,629.35 on a replacement cost basis.[14] This new estimate *also did not include costs to replace the roof of the Property.*[15] Upon receipt, D'Brook worked with the PA in an attempt to negotiate a settlement of the disputed scope of repairs. The parties were ultimately unable to settle the claim and the Insured demanded appraisal through attorney Eric Dick on September 8, 2020.[16] Notably, the demand included reference to damages totaling $42,564.35 on an RCV basis, which was based on an estimate from Quantum Claim Consulting Services in that same amount.[17] Again, this estimate *did not include costs to replace the roof of the Property.*[18]

During the instant litigation, the Insured has submitted yet another revised estimate from Quantum Claim Consulting Services for alleged repairs totaling $94,103.22 on a RCV basis.[19] This new estimate is consistent with the $42,564.35 estimate, except for the addition of costs to replace the roof totaling $51,538.87 – sums that had *not previously been a part of Plaintiff's claim for damages* because, again, to this point it was undisputed that any alleged damage to the roof of the Property was wholly unrelated to the Claim.[20]

---

[14] DEF000172, Exhibit 10.

[15] *Id.*

[16] DEF00013-00017, Exhibit 6.

[17] *Id.*

[18] *Id.*

[19] DEF00019, 00025, Exhibit 7.

[20] *Id*.

### III. <u>PROCEDURAL POSTURE</u>

Plaintiff filed suit on March 10, 2021 in the 212th District Court of Galveston County, Texas.[21] The action was subsequently removed to this Court based on diversity jurisdiction.[22] On June 4, 2021, Plaintiff filed its First Amended Complaint alleging the following causes of action against General Star: breach and anticipatory breach of contract, violations of the Texas Insurance Code for unfair settlement practices, violations of the Texas Insurance Code for failure to promptly pay claims, violations of the Texas Deceptive Trade Practices Act, breach of the duty of good faith and fair dealing, fraud, and conspiracy to commit illegal acts.[23]

On June 17, 2021, General Star filed its Motion for Partial Dismissal of Plaintiff's causes of actions for common law fraud and violations of the Texas Deceptive Trade Practices Act.[24] Plaintiff filed its response to General Star's Motion for Partial Dismissal on July 8, 2021.[25] On July 15, 2021, General Star filed its Reply in Support of its Motion for Partial Dismissal.[26]

On November 9, 2021, Magistrate Judge Edison granted General Star's Motion for Partial Dismissal and dismissed Plaintiff's claims for common law fraud and violations of

---

[21] Dkt. No. 1-1.

[22] Dkt. No. 1.

[23] Dkt. No. 10.

[24] Dkt. No. 12.

[25] Dkt. No. 14.

[26] Dkt. No. 15.

the Texas Deceptive Trade Practices Act against General Star, which was adopted by this Court on December 16, 2021.[27]

## IV. ARGUMENT

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[28] The principal inquiry for the Court is "whether there is the need for a trial" to ascertain "if there are any genuine factual issues that properly can be resolved only by a finder of fact."[29]

The initial burden is on the movant to show "an absence of evidence to support the nonmoving party's case."[30] Upon sufficient demonstration, the burden shifts to the nonmoving party "to set forth specific facts" for the purpose of "showing a genuine issue for trial."[31] This burden cannot be met where the nonmoving party puts forth "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[32] The nonmovant must "go beyond the pleadings," identifying specific facts in the record to show that there is a genuine issue of fact for trial.[33]

---

[27] Dkt. Nos. 20 and 21.

[28] Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999).

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[30] *Freeman v. Texas Dept. Of Criminal Justice*, 369 F.3d 854, 860 (5th. Cir. 2004).

[31] *Id.*; *See also* Fed. R. Civ. P. 56(c)(e).

[32] *Freeman v. Texas Dept. Of Criminal Justice*, 369 F.3d 854, 860 (5th. Cir. 2004).

[33] *Stults v. Conoco, Inc*., 76 F.3d 651, 656 (5th. Cir. 1996).

### A. Plaintiff's Claim for Breach of Contract Fails as a Matter of Law.

A breach of contract claim requires that "(1) a valid contract exists; (2) the plaintiff performed, or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach."[34] With respect to an insurance contract, the insured has the initial burden of showing the injury or damage sustained is covered by the applicable policy.[35] When the insured satisfies this burden, the burden then shifts to the insurer to establish that the loss falls within an exclusion to the policy's coverage.[36]

Plaintiff's alleged actual damages total $94,103.22 on a replacement cost basis, which includes damages to replace the roof of the Property totaling $51,538.87.[37] It is *undisputed*, however, that damage to the roof of the Property existed prior to the date of loss at issue and is wholly unrelated to the incident made the basis of this Claim. In fact, during the adjustment of the claim, Plaintiff's own consultants submitted multiple estimates *that did not include costs to repair the roof*. Instead, they expressly noted that the roof had sustained damage due to Hurricane Harvey – prior to and unrelated to the vehicle collision at issue in this action:[38]

---

[34] *Pathfinder Oil & Gas, Inc. v. Great Western Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

[35] *See e.g., Seger v. Yorkshire insurance Co., Ltd.*, 503 S.W.3d 388, 400 (Tex. 2016); *Fiess v. State Farm Lloyds,* 392 F.3d 802, 807 (5th Cir. 2004) (applying Texas law).

[36] *Id.*

[37] DEF00019, 00025, Exhibit 7.

[38] DEF000225, Exhibit 11.



54  54-Roof
Date Taken: 12-19-2017

Overview of roofing component that once stood standing that blew over during hurricane Harvey that impacted the aluminum roof.

The roof also had significant signs of pre-existing damage. General Star's designated engineering expert, Matthew Gardiner, P.E., inspected the Property on February 6, 2018.[39] Based on his experience, investigation and inspection of the Property, Mr. Gardiner determined the following:[40]

> [O]ur inspection revealed multiple previous repairs including installation of modified bitumen roofing material along the inside vertical face of the parapet wall and partial coating with a bituminous roof sealant both in the field of the roof and at parapet wall interfaces. The sealant was cracked and severely weathered, indicating both that the roof had leaked previously and that the repair had been done years prior to our inspection. The **previous roof repairs were in poor condition and likely led to water ingress and the observed leaks in the northeast office area and were unrelated to the vehicle impact.**

Notably, Plaintiff has produced no evidence, including the designation of any expert, to dispute Gardiner's opinions on causation.

---

[39]  DEF000389, Exhibit 13.

[40]  DEF000393, Exhibit 13.

The Policy specifically bars coverage for damage caused by windstorm (Hurricane Harvey) and wear and tear or deterioration:

### WINDSTORM OR HAIL EXCLUSION ENDORSEMENT[41]

With respect to the location(s) indicated in the Schedule, the following provisions apply.

A. The following is added to the **Exclusions** section and is therefore **not** a Covered Cause of Loss:

### WINDSTORM OR HAIL

We will not pay for loss or damage:

1. Caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or

2. Caused by rain, snow, sand, or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Windstorm or Hail. But if Windstorm or Hail results in a cause of loss other than rain, snow, sand, or dust, and that resulting cause of loss is a Covered Cause of Loss, we will pay for the loss or damage caused by such Covered Cause of Loss.

   But if Windstorm or Hail results in a cause of loss other than snow, sand or dust, and that resulting loss is a Covered Cause of Loss, we will pay for the loss or damage caused by such Covered Cause of Loss. For example, if the Windstorm or Hail damages a heating system and fire results, the loss or damage atrributable to the fire is covered subject to any other applicable policy provisions.

\*   \*   \*

---

[41] DEF000382, Exhibit 12.

## CAUSES OF LOSS – SPECIAL FORM

\* \* \*

B. **EXCLUSIONS:**[42]

\* \* \*

2. We will not pay for loss or damage caused by or resulting from any of the following:

   \* \* \*

   d. (1) Wear and tear;
   (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

   \* \* \*

   f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

   \* \* \*

Because the additional damage to the roofing claimed by Plaintiff in its expert's estimate is pre-existing and resulting from windstorm, wear and tear and/or deterioration, it is excluded under the Policy. As Plaintiff has not provided (and cannot provide) competent summary judgment evidence to dispute the applicability of these exclusions to the claimed roof damage, summary judgment should be granted on its breach of contract claim relating to such alleged roof damage, in the amount of $51,538.87.

---

[42] DEF000374, Exhibit 12.

Further, summary judgment on the remaining contractual claim for $8,227.21[43] should also be granted as a matter of law, as Plaintiff has failed to support that the additional claimed damages are covered under the Policy. Stemming from an insured's initial burden to prove the injury or damage sustained is covered by the applicable policy,[44] "[w]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage."[45] If the insured does not present some evidence "upon which a jury or court could segregate covered damages from uncovered damages," then the insured's oversight becomes "fatal to its claim."[46]

Here, Plaintiff has been paid a total of $33,337.23 in covered damages under the Policy, based on the findings of General Star's consultant and engineer.[47] Plaintiff has failed to identify *any* experts in this litigation to contest those findings, or otherwise support its position that any damage exceeding the tendered amount was caused by the September 14, 2017 vehicular incident and accordingly covered by the Policy – this, despite the fact that its own consultants had unquestionably noted the existence of excluded damage sustained due to Hurricane Harvey. As such, Plaintiff has failed to meet its burden under

---

[43] Plaintiff's claimed damages totaling $94,103.22 less the $51,538.87 excluded damages to the roof, less General Star's prior payments totaling $33,337.23, and less the Policy's applicable deductible of $1,000.

[44] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018).

[45] *Id.* (quoting *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)).

[46] *Hamilton Properties v. American Ins. Co.*, 643 Fed.Appx. 437, 442 (5th Cir. 2016) (citing *Wallis v. United Servs. Auto Ass'n*, 2 S.W.3d 300, 304 (Tex.App.—San Antonio 1999, pet. Denied)).

[47] DEF00012, Exhibit 5.

12

Texas law to segregate covered damages from non-covered damages, which is "fatal to its claim."[48]

Ultimately, there is no evidence that the car collision on or about September 14, 2017 caused damage to Plaintiff's Property above the applicable deductible and prior payments made by General Star on this Claim. Further, all alleged damage to the roofing resulting from Hurricane Harvey is expressly excluded under the Policy. Accordingly, Plaintiff's breach-of-contract claim fails as a matter of law, and General Star's Motion for Summary Judgment with respect to Plaintiff's contractual claim should be granted.[49]

### B. Plaintiff's Extra Contractual Claims Fail as a Matter of Law.

For an insured to recover for statutory bad faith under Chapter 541 of the Insurance Code/the Texas DTPA or for common-law bad faith, it must first show that the insurance carrier breached the contract.[50] Because Plaintiff does not have a viable breach-of-contract claim, by extension, Plaintiff cannot recover for its extra-contractual claims that are

---

[48] *See, e.g., Hamilton,* 643 Fed.Appx. at 442.

[49] *See Travelers Indem. Co. v. McKillip,* 469 S.W.2d 160 (Tex. 1971) ("the insureds [are] obligated to introduce evidence to prove and secure jury findings that the damage was caused solely by [a covered peril]; or segregating the damage caused by the [the covered peril] from that caused by the [excluded peril]."); *General Star Indemnity Co. v. Sherry Brooke Revocable Trust,* 243 F.Supp.2d 605, 632 (W.D. Tex. 2001) (granting summary judgment in favor of the insurer because the insured could not segregate damage caused from the plumbing, a covered peril, versus damage caused from "wear and tear" or "[s]ettling, cracking, shrinking or expansion.").

[50] *E.g., USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) ("The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy."); *Quibodeaux v. Nautilus Ins. Co*., 655 Fed. App'x 984, 987 (5th Cir. 2016) ("Under Texas law, to prevail on a common-law bad faith claim, an insured must first show that the insurer breached the contract. The same requirement applies to claims for statutory bad faith under Chapter 541 of the Insurance Code and under the Trade Practices Act." (citations omitted)).

13

premised solely on a failure to allegedly pay the policy benefits.[51] Even if Plaintiff's breach of contract claim survives, however, Plaintiff's extracontractual claims fail as a matter of law, as follows.

### i. Breach of Common Law Duty of Good Faith and Fair Dealing

Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith.[52] The critical inquiry for the Court is evaluating "the reasonableness of the insurer's conduct in rejecting the claim."[53] A breach of the duty of good faith and fair dealing is met when: "(1) there is an absence of a reasonable basis for denying or delaying payment of benefits and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying the payment of the claim."[54] "[A]n insurer breaches its duty of good faith if it denies a claim and its liability has become reasonably clear."[55]

"The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved."[56] If, after reasonable investigation, the insurer has evidence showing that the insured's claim may be invalid, a

---

[51] *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 135 (Tex. 2019) ("Because Ortiz seeks no actual damages other than the policy benefits paid in accordance with the policy's appraisal provision, he may not maintain a bad faith claim under either the common law or chapter 541.").

[52] *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 194 (Tex.1998).

[53] *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex.1993).

[54] *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995); see also *Lyons,* 866 S.W.2d at 600.

[55] *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) (discussing the holding of *Universe Life Insurance Company v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997)).

[56] *Id.*

14

bad faith action is not viable.[57] In *Greenville Townhome Owners Ass'n, Inc. v. Phila. Indem. Ins. Co.*, the court granted the insurer's motion for summary judgment as to the plaintiff's bad faith claim because the plaintiff did not present any evidence that the insurer engaged in "a biased and pretextual investigation," as the evidence supported the fact that the insurer relied on its expert's findings to adjust the plaintiff's claim.[58]

Here, as the basis for its bad faith claim, Plaintiff alleges that Defendant's liability was reasonably clear under the Policy and Defendant failed to "adequately and reasonably investigate and evaluate" Plaintiff's claims before refusing to pay Plaintiff in full.[59] However, as discussed in more detail above, General Star completed a timely and complete investigation, with the assistance of consultants and an engineer, and tendered coverage pursuant to its investigation totaling $33,337.23 in coverage for the Claim.[60] Conversely, Plaintiff is seeking a replacement cost of $94,103.22, of which $51,538.87 relates to a full roof replacement – damages that are unrelated to the Claim and expressly excluded under the Policy. Ultimately, there is no evidence that Defendant engaged in any unreasonable conduct, as the Policy simply does not provide coverage for any additional amounts Plaintiff seeks through this lawsuit. Accordingly, Defendant is entitled to summary judgment on Plaintiff's common-law-bad-faith cause of action as a matter of law.

---

[57] *See Tucker v. State Farm Fire & Cas. Co.*, 981 F.Supp. 461, 465 (S.D. Tex. 1997).

[58] *Greenville Townhome Owners Ass'n, Inc. v. Phila. Indem. Ins. Co.*, 473 F. Supp. 3d 692, 698 (N.D. Tex. 2020); *see also Richardson E. Baptist Church v. Philadelphia Indem. Ins. Co.*, No. 05-14-01491-CV, 2016 WL 1242480, at *11 (Tex. App.—Dallas Mar. 30, 2016, pet. denied) ("There is no evidence in the record that Philadelphia Indemnity should have known its experts' estimations were inaccurate.").

[59] Dkt. No. 10, Pl.'s Am. Compl. ¶ 37.

[60] DEF00012, Exhibit 5.

### ii.  Texas Insurance Code Violations

"The insurer 'will not be faced with a tort suit [under the Texas Insurance Code] for challenging a claim of coverage if there was any reasonable basis for denial of that coverage.'"[61] However, "the extracontractual claim must share 'the same predicate for recovery as bad faith causes of action in Texas.'"[62] "Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas."[63] As Plaintiff has failed to present evidence that establishes a genuine issue of material fact concerning its claim for breach of the duty of good faith and fair dealing, its claims under Chapter 541 of the Texas Insurance Code likewise fail. Moreover, a claim under Chapter 542 of the Texas Insurance Code requires a showing that the insurer "is liable for the claim," which, as outlined above, Plaintiff cannot establish.[64]

Finally, as an *extra-contractual* cause of action, claims for statutory violations of the Texas Insurance Code generally cannot be maintained without a breach of contract. The potential exceptions to this rule are when a statutory violation causes the insured to lose policy benefits, or when an insurance company commits "some act, so *extreme*, that

---

[61]  *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 525 (5th Cir. 2015).

[62]  *Hall Arts Ctr. Office, LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1000 (N.D. Tex. 2018).

[63]  *See Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F.Supp.2d 801, 811 (N.D. Tex. 2010); *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 525 (5th Cir. 2015).

[64]  *Weiser–Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.,* 801 F.3d 512, 518 (5th Cir.2015) (citing *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford,* 268 S.W.3d 822, 830–31 (Tex.App.—Forth Worth 2008, no pet.)); *Hamilton Props. v. Am. Ins. Co.*, 643 Fed. Appx. 437, 442 (5th Cir. 2016) (per curiam) (explaining that plaintiffs cannot prevail on "extra-contractual claims for violation of the Texas Deceptive Trade Practices Act, Sections 541 and 542 of the Texas Insurance Code, and the duty of good faith and fair dealing" absent a showing that an insurer breached its contract with the insured)

would cause injury independent of the policy claim."[65] As recently observed by the Texas Supreme Court, Texas courts have "yet to encounter" an instance of a truly independent injury in this type of dispute.[66] Here, Plaintiff does not plead or seek recovery for any injury independent of its claim for policy benefits. As Defendant has not breached its contract with Plaintiff, and Plaintiff is not claiming an independent injury, Defendant is entitled to summary judgment on Plaintiff's claims under the Texas Insurance Code.

### C. Plaintiff Has Not Presented Any Evidence to Support its Claim for Ongoing Conspiracy to Commit Illegal Acts.

Plaintiff also alleges an ongoing conspiracy to commit illegal acts.[67] Although Plaintiff alleges an "ongoing conspiracy to commit illegal acts," it fails to identify any actual illegal acts.[68] Plaintiff simply refers to misrepresentations and fraud, making this claim indistinguishable from its fraud and DTPA claims, all of which must fall together, as they are based on the same facts and the same unsupported theories. As the Court has previously dismissed Plaintiff's claim for fraud and violations of the DTPA,[69] summary judgment is appropriate on this claim.

---

[65] *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499 (Tex. 2018).

[66] *Id.*

[67] Dkt. No. 10, Pl.'s Am. Compl. ¶¶ 52–54.

[68] *Id.*

[69] Dkt. Nos. 20 and 21.

## V.     CONCLUSION

For these reasons stated above, Defendant General Star Indemnity Company prays that the Court grant Defendant's Motion for Summary Judgment, and for any and all such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

By: */s/ Kristin C. Cummings*
Kristin C. Cummings
Attorney-in-Charge
Texas Bar No. 24049828
Federal ID No. 719639
kcummings@zellelaw.com

**ZELLE LLP**
901 Main Street, Suite 4000
Dallas, Texas 75202-3975
Telephone:    (214) 742-3000
Facsimile:    (214) 760-8994

**ATTORNEY-IN-CHARGE FOR DEFENDANT GENERAL STAR INDEMNITY COMPANY**

**OF COUNSEL:**

Lindsey P. Bruning
Texas Bar No. 24064967
Federal ID No. 997691
lbruning@zellelaw.com
Han N. "Hanna" Kim
Texas Bar No. 24100926
Federal ID No. 3321437
hkim@zellelaw.com

**ZELLE LLP**
901 Main Street, Suite 4000
Dallas, Texas 75202-3975

Telephone: (214) 742-3000
Facsimile: (214) 760-8994

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing document has been served on July 29, 2022, in compliance with the Federal Rules of Civil Procedure by electronic service as follows:

    Eric B. Dick
    State Bar No. 24064316
    eric@dicklawfirm.com
    **DICK LAW FIRM, PLLC**
    3701 Brookwoods Drive
    Houston, Texas 77092
    Telephone: (832) 207-2007
    **ATTORNEY FOR PLAINTIFF**

                                                  */s/ Kristin C. Cummings*
                                                    Kristin C. Cummings