Case 3:21-cv-00103   Document 39   Filed on 10/28/22 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
October 28, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:21-cv-103

SMILEY TEAM II, INC., *PLAINTIFF*,

v.

GENERAL STAR INSURANCE COMPANY, *DEFENDANT*.

### MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is General Star Indemnity Company's motion for summary judgment.[1] Dkt. 29. The court grants the motion.

## I. BACKGROUND

Smiley Team II, Inc., owns a convenience store ("the Property") in Hitchcock. Dkts. 10 ¶¶ 1, 6; 29-1. General Star Indemnity Company issued a commercial insurance policy covering the Property during the policy period of February 17, 2017, to February 17, 2018. Dkt. 29-12 at 2. It did not cover

---

[1] The plaintiff's complaint incorrectly names the defendant as General Star Insurance Company. Dkt. 29 at 1 n.1.

any pre-existing wear and tear or any future damage caused by windstorms or hail. Dkts. 29 at 1–2; 29-12 at 100, 108. In August 2017, Hurricane Harvey struck the Texas Gulf Coast, destroying structures throughout the region. On or about September 14, 2017,[2] a vehicle collided with the convenience store on the Property. Dkts. 29 at 1; 31 at 1. General Star received notice of the accident and contracted with D'Brook & Company, Inc., to perform adjustment services. Dkt. 29 at 3.

D'Brook later reported to General Star that a car had "struck [Smiley Team's] building traveling at high speed, damaging the front of the building, interior walls, flooring, and the entrance doors, as well as the bars protecting the windows on the exterior of the building." Dkt. 29-1. D'Brook also relayed that Smiley Team was working with a contractor to estimate the cost of repairs. *Id.* On December 23, 2017, Smiley Team's adjuster, Michael Mikula, Jr., provided his damage estimate: $129,058.16 on a replacement cost value (RCV) basis. Dkt. 29-11 at 9. The estimate included $37,590.53 in roof-related repairs. *Id.* at 2–3. D'Brook replied that these numbers were "totally off base"; it also indicated that Smiley Team had asked the adjuster to compile an estimate covering "any and all damages to the building including

---

[2] Though an apparent discrepancy exists regarding the exact date the collision occurred, General Star has accepted for summary-judgment purposes that the accident happened on September 14. *See* Dkt. 29 at 3 n.3.

to the roof, interior, etc." Dkt. 29-3. After discussions with D'Brook, the adjuster stated (according to D'Brook) that he would provide a figure which covered only the damage caused by the vehicle collision. *Id.* Mikula did so on January 4, 2018, this time estimating damages at $50,676.49 on an RCV basis. Dkt. 29-9 at 7. The estimate appears to include costs of repair for the canopy roof, but not the property's permanent roof structure. *Id.* at 2.

Meanwhile, to help generate its own estimate, D'Brook procured the services of Haag Engineering which deployed engineer Matthew Gardiner to inspect the property. Dkts. 29-3; 29-13 at 2. Gardiner found that "numerous older repairs were visible" to the roof, "indicating both that the roof had leaked previously and that the repair had been done years prior." Dkt. 29-13 at 4, 5. These "previous roof repairs were in poor condition and likely led to water ingress and the observed leaks in the northeast office area," which were "unrelated to the vehicle impact." *Id.* at 5. Following Gardiner's report, D'Brook completed its damage estimate, amounting to $39,318.04 on an RCV basis. Dkt. 29-4 at 8. After subtracting the policy's deductible and depreciation, General Star issued payment of $33,337.23 to Smiley Team on May 3, 2018. Dkts. 29 at 4; 29-5.

Many months later, Smiley Team sought additional adjustment services from L.A. Public Insurance Adjuster. Dkt. 29-10 at 2. L.A. produced

an estimate totaling $119,629.35 on a RCV basis. *Id.* at 13. The estimate did not include a roof replacement. D'Brook and L.A. unsuccessfully attempted to reconcile these dueling estimates. Dkt. 29 at 5. Smiley Team sought further adjustment from Quantum Claim Consulting Services, which produced an estimate by Richard Gadrow with an RCV of $94,103.22. Dkts. 29-7 at 5; 31-1 at 8. The figure included the sum of $51,538.87 for roofing repairs. Dkt. 29-7 at 2. Smiley Team followed Quantum's estimates with a demand letter and invocation of appraisal to General Star, seeking $42,564.35 plus $10,000 in attorney's fees and costs. Dkt. 29-6 at 2.

Smiley Team eventually filed suit in the 212th District Court of Galveston County. Dkt. 1 at 1. General Star timely removed to this court. *Id.* Smiley Team's live complaint accuses General Star of failing to pay adequate compensation under their policy after conducting an "outcome-oriented investigation." Dkt. 10 at 3, 4. The complaint charges General Star with breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code, fraud, and ongoing conspiracy to commit illegal acts. Dkt. 10 at 5–14.

On December 16, 2021, this court adopted Magistrate Judge Edison's recommendations to dismiss Smiley Team's fraud and DTPA claims. Dkt. 21.

General Star now moves for summary judgment on the remainder of Smiley Team's claims. Dkt. 29. General Star has also moved to exclude Smiley Team's experts. Dkt. 33.

## II.  LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The movant bears the burden of presenting the basis for the motion and the elements of the causes of action on which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence," then the fact is undisputed. *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "Such undisputed facts may form the basis for summary judgment." *Id.*

Texas law applies to the interpretation of the insurance contracts at issue in this case and such policies are subject to the general rules of contract interpretation. *Schneider Nat'l Transp. v. Ford. Motor Co.*, 280 F.3d 532, 537 (5th Cir. 2002). The terms of the insurance policies are to be "given their plain, ordinary and generally accepted meaning unless the instrument itself shows that the terms have been used in a technical or different sense." *Fed. Ins. Co. v. Srivastava*, 2 F.3d 98, 101 (5th Cir. 1993) (quoting *Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex. 1976)).

**III. Discussion**

    **A. Breach-of-Contract Claims**

Smiley Team proposes two theories of contractual breach, based on General Star's alleged underpayment of covered losses caused by the collision. Dkt. 31 at 5–6. The first is that the collision damaged the roof and General Star has wrongfully refused to pay for that damage. *Id.* The second

is that even if the roof damage is not covered, the parties still have a genuine dispute over whether General Star's prior payment of $33,337.23 adequately compensated Smiley Team for its covered losses. *Id.* Neither theory has enough evidentiary support to survive summary judgment.

### 1. The Roof

In its response to General Star's motion, Smiley Team proffers an affidavit and report from adjuster Richard Gadrow[3] in which he attests that he "estimate[d] the car colliding with the Property September 14, 2017 only and no preexisting event or its damages caused all damages identified in my estimate." Dkt. 31-1 at 1. That estimate totals $94,103.22, including $51,538.87 in roof repairs. Dkt. 31-1 at 2, 8. General Star argues that no genuine dispute of material fact exists to dispute that damage to the roof occurred before and is unrelated to the collision at issue. Dkt. 29 at 8. It submits evidence from Gardiner's engineering report, noting that the roof was already in poor condition before the collision, and that leaks from the roof were not caused by the collision. Dkts. 29 at 9; 29-13 at 5. It points to

---

[3] General Star has moved to exclude Gadrow as an expert on the grounds that (a) Smiley Team failed to disclose or designate Gadrow as an expert pursuant to Federal Rule of Civil Procedure 26, and (b) that Gadrow's opinions are unreliable as lacking sufficient basis. Dkt. 33 at 2. Because the court finds that the Gadrow affidavit on its face is inadequate to create a genuine issue of material fact, it declines to consider that motion, which is rendered moot by the court's decision on the summary-judgment motion.

multiple estimates from Smiley Team's own adjusters failing to identify any roof damage caused by the collision. Dkt. 29 at 2. And General Star draws attention to a photo caption in Mikula's estimate illustrating Hurricane Harvey's impact on the Property's aluminum roof. Dkt. 29 at 8–9.

General Star's evidence that the vehicle collision did not damage an already-worn roof is enough to satisfy its initial summary-judgment burden.

> Once a movant who does not have the burden of proof at trial makes a properly supported motion for summary judgment, the burden shifts to the nonmovant to show that [the motion] should not be granted. To do so, the nonmovant must identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.

*Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016) (internal quotations and citations omitted). Smiley Team, as the nonmovant, attempts to meet this burden by relying on the Gadrow affidavit and report. Dkt. 31 at 5–6. In his affidavit, Gadrow states:

> I estimate the car colliding with the Property September 14, 2017 only and no preexisting event or its damages caused all damages identified in my estimate, including damages to the roof . . . I implement reliable methodology in my testimony in this case because (1) I examined the property for which I facilitated my estimate on the amount of loss the September 14, 2017 car collision with the Property caused to the Property and (2) my estimate entailed I estimated the September 14, 2017 car collision caused covered damages to the property including damages to the roof . . . totaling $94,103.22 based on the condition and state of covered damages I observed and my education, training and professional experience as an Estimator. Additionally, I considered all evidence regarding this claim, the

>identified damages, alternative causes of loss and the insurance company's expert's opinions before forming my own opinion.

Dkt. 31-1 at 1.

As for his qualifications, Gadrow notes: "I am well-qualified by education, training and experience to provide the testimony I have been designated to give in this case because I have over fifteen years of professional experience as an Estimator." *Id.* at 2. The report is a compilation of figures in tables estimating damages, photos of the Property in various states of disrepair, and a copy of Gadrow's resume. *See generally* Dkt. 31-1.

The affidavit and accompanying report are insufficient to generate a material fact issue as to whether the vehicle collision caused damage to the roof. The affidavit provides conclusory statements and ultimate facts amounting to a naked assertion that the roof was damaged by the car's impact. "Unsupported [expert] affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Orthopedic & Sports Inj. Clinic v. Wang Labs.*, 922 F.2d 220, 225 (5th Cir. 1991) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)). Moreover, Gadrow's affidavit provides no factual basis for evaluating how he arrived at his findings, other than that he based his estimate on his observations, experience, and training. Dkt. 31-1 at 1. "Without more than credentials and a subjective opinion, an

expert's testimony that 'it is so' is not" enough to defeat summary judgment. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).[4] The large compendium of photos taken by Gadrow of the Property are not evidence that the collision, rather than Hurricane Harvey or some pre-existing cause or general wear and tear, caused damaged to the roof.

### 2. Remaining Damage Claims

Smiley Team argues that even if the roof-related sums are dropped from the equation, a genuine issue of material fact exists as to the remainder of the difference between the competing estimates—approximately $10,000. Dkt. 31 at 4–5. Specifically, using Gadrow's estimate as a basis, and removing the roof estimates, Smiley Team's damage from the collision amounted to $42,564.35. Deducting the $33,337.23 already paid by General Star and the policy's $1,000 deductible produces a liability figure of $8,227.12. General Star argues that Smiley Team has provided no evidence that would allow a jury to "segregate" those damages which are covered by the policy from those which are not. Dkt. 32 at 4–5.

"Texas recognizes the doctrine of concurrent causes, so that when

---

[4] *See also Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 200 (5th Cir. 2015) (per curiam) (finding an expert's affidavit insufficient to generate a genuine dispute of material fact where it amounted to "little more than an allusion to his credentials, a recitation of the hail damage observed, and a conclusory, 'subjective opinion' that the damage resulted from a hail storm within the policy period").

'covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril(s).'" *Nat'l Union Fire Ins. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 669 (S.D. Tex. 2010) (quoting *Wallis v. United Servs. Auto Ass'n*, 2 S.W.3d 300, 302–03 (Tex. App.—San Antonio 1999, pet. denied)). "Failure to provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not is fatal to an insured party's claim." *Id.* (citing *Wallis*, 2 S.W.3d at 304). *See also Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170–71 (5th Cir. 2018) (affirming summary judgment against a plaintiff where "the record lacked reliable evidence permitting a jury to determine which" covered and uncovered weather events caused damage to a structure).

In this case, and at this stage of the litigation, that means Smiley Team needs to provide some evidence which could enable a factfinder to segregate damages caused by the vehicle collision from those caused by Hurricane Harvey or pre-existing wear and tear. The court finds that it has not done so. Gadrow's affidavit attempts to provide a basis and, as Smiley Team argues, "Gadrow was crystal clear in his estimate report that 100% of the damages . . . were caused by the vehicle collision . . . and thereby Plaintiff's

damages were segregated." Dkt. 31 at 6. But this "just so" statement in the affidavit is not evidence that can defeat summary judgment, after General Star has put forward evidence from Gardiner's engineering analysis and Mikula's report supporting its argument that the roof was already damaged when the collision happened, either from general wear and tear, Hurricane Harvey, or some combination of both. Gadrow's affidavit and report do not contain any facts which would allow a jury to segregate damages; they simply assert that the collision caused the entirety of the injury.

Accordingly, General Star is granted summary judgment on Smiley Team's breach-of-contract claim.

### B. Extra-Contractual Claims

General Star has moved for summary judgment on Smiley Team's extra-contractual claims: breach of the common-law duty of good faith and fair dealing, violations of the Texas Insurance Code, and ongoing conspiracy to commit illegal acts. The court evaluates these in turn.

As an initial matter, insurance breach-of-contract claims are "'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018) (citing *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996)). "The 'general rule' is that 'an insured

cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy.'" *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 134 (Tex. 2019) (quoting *Menchaca*, 545 S.W.3d at 495). Regardless of whether an insured is entitled to benefits under the policy, he may recover damages for a statutory violation that causes an injury "independent from the loss of the benefits." *Id.* (quoting *Menchaca*, 545 S.W.3d at 499–500).

### 1. Duty of Good Faith and Fair Dealing

General Star moves for summary judgment on Smiley Team's common-law claim for breach of the duty of good faith and fair dealing. Dkt. 29 at 14. Smiley Team's response doesn't appear to directly grapple with these arguments, only addressing the common-law bad-faith standard in the context of the Insurance Code and DTPA claims. Dkt. 31 at 8 ("Defendant Insurer must do more than simply negate its liability under the common law bad faith standard to obtain summary judgment on Plaintiff's remaining claims under the Insurance Code and DTPA.").

Regardless, to demonstrate an insurer's breach of these common-law duties, a plaintiff must show that "(1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis

for denying the claim or delaying payment of the claim." *Bilotto v. Allied Prop. and Cas. Ins. Co.*, 79 F. Supp. 3d 660, 674 (W.D. Tex. 2015) (quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995)). The record does not contain evidence which would enable a jury to find that General Star breached its common-law duty by behaving unreasonably. *See Lyons v. Miller Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993) (noting that "the issue of bad faith focuses on . . . the reasonableness of the insurer's conduct").

Moreover, generally "an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." *Bilotto*, 79 F. Supp. 3d at 674 (quoting *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, 459 F. App'x 366, 368 (5th Cir. 2012) (per curiam)). As discussed above, the court has found that Smiley Team has not produced evidence to show that General Star breached the contract. An exception to that rule may apply when the insurer commits an "extreme" act, but no evidence here would support such a finding. *See Blum's Furniture Co.*, 459 F. App'x at 368 (citing *Republic Ins. Co.* 903 S.W.2d at 341). And as discussed above, the Supreme Court of Texas has clarified that "independent" injuries arising from an insurer's conduct can be remedied in tort. *Menchaca*, 545 S.W.3d at 499–500 (noting that damages that are "truly independent of the insured's right to receive policy benefits" can be

recovered regardless of whether the plaintiff can show breach of contract, including compensatory damages for the tort of bad faith). But Smiley Team has not adduced evidence to show any such injury.

For these reasons, General Star is granted summary judgment on this claim.

### 2. Texas Insurance Code

Smiley Team alleges violations of Texas Insurance Code § 541, specifically § 541.060(a)(1), "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue," and § 541.060(a)(7), "refusing to pay a claim without conducting a reasonable investigation." Tex. Ins. Code § 541.060(a)(1), (7).

As an initial matter, the court finds that because Smiley Team's statutory claims "are based on unpaid coverage benefits rather than some other, independent injury," they fail. *Lowen*, 892 F.3d at 172; *see also Menchaca*, 545 S.W.3d at 489 ("[A]n insured cannot recover any damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.").

Moreover, Smiley Team does not present any evidence which would generate a genuine issue of material fact on any of these conclusory

allegations. Smiley Team repeats that "evidence exists which creates a material fact issue on whether Defendant Insurer failed to provide Plaintiff with a timely indication of acceptance or rejection, regarding the full and entire claim, or an explanation of the loss as assessed," but does not detail what that evidence is or cite to anything in the record. Dkt. 31 at 9. Smiley Team insists that General Star "performed an outcome-oriented investigation of Plaintiff's claim in order to disclaim coverage and delay payment," but does not provide any facts which would support that accusation. *Id.*

Smiley Team also sues under Texas Insurance Code § 542, also known as the Prompt Payment of Claims Act. The court grants summary judgment on this claim for the same reasons it grants summary judgment on the § 541 claims. *See Prime Time Fam. Ent. Ctr. v. AXIS Ins. Co.*, 630 S.W.3d 226, 233–234 (Tex. App.—Eastland 2020, no pet.) (applying *Menchaca* and rejecting a § 542 claim where the plaintiff "cannot show a right to receive benefits under the policy and . . . has not alleged or shown an independent injury").

### 3. Conspiracy to Commit Illegal Acts

General Star has also moved for summary judgment on Smiley Team's conspiracy claims. In response, Smiley Team accuses General Star of

> conspir[ing] with its agents and adjusters to commit illegal acts by conspiring to sell policies and wrongfully underpay claims in order to increase its own profits . . . Plaintiff's experience is not an isolated case. Defendant Insurer's acts and omissions . . . occur so frequent [sic] as to constitute a general business practice. Defendant Insurer's entire process is unfairly designed.

Dkt. 31 at 13–14. These conclusory statements give no specific factual or evidentiary context to support a finding that General Star engaged in any conspiracy. Summary judgment is granted on the conspiracy claim.

### 4. Fraud and DTPA Claims

Smiley Team defends its fraud and DTPA claims in its response to General Star's motion for summary judgment. Dkt. 31 at 13. But the court has already dismissed those claims. Dkt. 21. They remain dismissed.

\*   \*   \*

For the reasons above, the court grants General Star's motion for summary judgment. Dkt. 29. General Star's motion to exclude is denied as moot. Dkt. 33. Final judgment will be entered separately.

Signed on Galveston Island this 28th day of October, 2022.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE